09 CIV 3487

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SISTERS OF CHARITY OF THE BLESSED VIRGIN MARY, DUBUQUE IOWA,<br><br>    Plaintiff,<br><br>v.<br><br>STATE STREET BANK AND TRUST COMPANY and STATE STREET GLOBAL ADVISORS, INC.,<br><br>    Defendants. | No.<br><br>RECEIVED<br>APR   2009<br>USDC SDNY<br>CASHIERS<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, the Sisters of Charity of the Blessed Virgin Mary, Dubuque, Iowa, ("Sisters" or "Plaintiff") brings this action against State Street Bank and Trust Company ("State Street Bank") and State Street Global Advisors, Inc. ("SSgA") (collectively "State Street" or "Defendants") and alleges upon personal knowledge with respect to its own acts and upon information and belief as to all other matters based upon the investigation made by and through its counsel, as follows:

### NATURE OF THE ACTION

1.     This action arises from Defendants' gross violation of their obligations as trustees and fiduciaries for the Sisters' investment funds.  State Street acted as a fiduciary and investment manager for the Sisters and was directed to invest pursuant to the advertised "Enhanced Dow Jones-AIG Commodities Future Strategy" (the "Commodities Strategy"), purportedly a conservative

investment strategy.

2.    State Street characterized the Commodities Strategy as an "enhanced" fund whose performance objectives were meant to exceed the Dow Jones-AIG Commodities Index.

3.    The Sisters' cash collateral for the Commodities Strategy was invested in the Limited Duration Bond Strategy ("LDB Strategy"). State Street repeatedly represented that its bond funds including the LDB Strategy sought to "consistently exceed relevant benchmark returns by capturing excess returns overlooked or unattainable by less robust methodologies, without incurring unnecessary investment risk." State Street further represented that its core bond strategies "seek to add consistent returns over relevant indices while taking moderate active risk" and while "maintaining an appropriate relationship between risk and excess return." State Street represented that the LDB Strategy was to be an "actively managed fund with little investment risk that sought to match or exceed the return of the J.P. Morgan one month U.S. Dollar Libor Index."

4.    State Street's investments, in reality, radically differed from their stated investment strategies and risk assessment, causing Plaintiff to lose a significant amount of money as a result of State Street's mismanagement and breach of fiduciary duty.

5.    Unbeknownst to Plaintiff, State Street exposed the Sisters' assets to investments in subprime mortgages and also took highly leveraged positions in mortgage-related financial derivatives, creating an inappropriate level of risk

2

which materially departed from the stated investment objectives of these purportedly stable and predictable funds.

6.     During the summer of 2007, State Street's purportedly conservative LDB Strategy fell dramatically from its benchmark indices because of its over-exposure to risky assets and securities.

7.     As a result of State Street's misconduct, the Sisters have lost over one million dollars.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332.  Complete diversity exists in that Plaintiff is a citizen of Iowa and Defendants are citizen of Massachusetts.  Also, the controversy exceeds $75,000.

9.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) as Defendants may be found in this District because State Street maintains an office in this District.

## THE PARTIES

10.     Plaintiff Sisters is an Iowa non-profit corporation headquartered in Dubuque, Iowa and performs ministries in 25 states and three foreign countries. In 2004, the Sisters entered into an agreement with Defendants whereby State Street became the investment manager for certain assets of the Sisters.

11.     Defendant State Street Bank is a bank organized under the laws of the Commonwealth of Massachussets with its principal place of business in

3

Boston, Massachussets. State Street Bank is a wholly-owned subsidiary of State Street Corporation, a publicly registered financial holding company.

12. Defendant SSgA is a Delaware Corporation and maintains its principal place of business in Boston, Massachusetts. SSgA is a wholly-owned subsidiary of State Street Corporation of which it is the investment management arm. SSgA currently has $1.9 trillion in assets under management and describes itself as the world's largest institutional asset manager.

## SUBSTANTIVE ALLEGATIONS

13. In the spring of 2005, the Sisters were looking to safely invest certain assets for the care of retired Sisters and accordingly had discussions with representatives of State Street.

14. In connection with these discussions, SSgA forwarded the Sisters marketing materials regarding an investment option entitled the Enhanced Dow Jones-AIG Commodities Future Strategy (the "Commodities Strategy") offered by SSgA. SSgA made representations regarding the Commodities Strategy in the solicitation materials:

> The DJ-AIG Commodity Index Strategy provides investors with daily, low-cost access to the returns of the commodities futures market by investing in a combination of DJ-AIG Commodity futures contracts, individual commodity futures, and swaps.

> \*\*\*

> *The DJ-AIG Commodity Index Strategy remains unleveraged at all times*. However, since the purchase of futures contracts requires only the posting of a "good faith" deposit, residual cash balances held in the Strategy may be invested in high quality money market securities

4

or commingled vehicles investing in such securities. *The cash collateral is invested in the Limited Duration Bond Strategy, which seeks to exceed the returns of the J.P. Morgan one-month U.S. Dollar Libor Index.* The Strategy is monitored daily to ensure that the futures exposure is appropriate for the level of underlying cash.

(emphasis added.)

15.     SSgA's materials made clear that the Commodities Strategy remained unleveraged at all times.

16.     .SSgA stated that an investment in the Commodities Strategy required the posting of a "good faith" deposit or cash collateral given that the Commodities Strategy invested in futures contracts.  SSgA represented that the cash collateral would be invested in the Limited Duration Bond Strategy (the "LDB Strategy").

17.     SSgA represented the LDB Strategy as follows in its marketing materials:

### Investment Objective

The Limited Duration Bond Strategy seeks to maximize income while preserving capital by investing in a diversified profolio of highly rated fixed income securities. The Strategy seeks to match or exceed the returns of the JP Morgan one-month US dollar LIBOr Index over trailing one-year periods.

### Description

The Limited Duration Bond Strategy utilizes an expanded universe of securities that goes beyond typical money markets including: Treasuries, agencies, collateralized mortgage obligations, adjustable rate mortgages, fixed rate mortgages, corporate bonds, asset backed securities, futures, options, and swaps. All securities purchased for the fund have a minimum investment grade rating by either Standard and Poor's or Moody's Investor Service. The Fund's maximum effective duration is one year.

5

**Key Feautures**

-Enhanced performance over traditional money market returns

-High credit quality

-Controlled interest rate exposure

-Sophisticated credit analysis

*** 

**Risk Management**

When compared to the typical 2 A-7 regulated money market portfolio, the Strategy has better sector diversification, higher average credit quality, and higher expected returns. The tradeoff is this fund purchases issues that are less liquid than money market instruments and these instruments will have more price volatility. This Strategy should not be used for daily liquidity. Returns to the Strategy are more volatile over short horizons than traditional cash alternatives and may not benefit the short-term investor.

18.    In the marketing materials, SSgA further represented that the LDB

Strategy's exposure to BBB rated securities would be minimal (less than 2% of the

Fund would be in Baa/BBB bonds, specifically noting that the breakdown of the

LDB Strategy's investment would be:

AAA 72.80%<br>
AA 16.80<br>
A 8.60<br>
Baa 1.80

19.    After reviewing the materials provided by SSgA and after

discussions with State Street, State Street Bank and the Sisters entered into an

Agreement of Trust dated June 2, 2005 (the "Agreement of Trust"). Pursuant to

the Agreement of Trust, State Street Bank would act as a trustee and fiduciary on

6

behalf of the Sisters with full discretion to invest in accordance with the investment objectives specified. SSgA, in turn was selected by State Street Bank to invest the assets.

20.     The Agreement of Trust shows that State Street had sole investment discretion with respect to the Sisters' investment. The Sisters had no control over the investment process or investment decisions. Specifically, the Agreement of Trust noted that State Street Bank had the power:

> to retain, purchase and invest in any securities, regardless of their character, their quality, any requirement of diversification or any other principle applicable to investments of fiduciaries, with the investment objectives specified [as the "Enhanced Dow Jones-AIG Commodities Futures Strategy- The Investment Objective of the Strategy shall be to attempt to outperform the performance of the Dow Jones-AIG Commodities Index"], as amended from time to time, and as determined by [State Street Bank] in its sole discretion .
> . . .

21.     In connection with the execution of the Agreement of Trust, the Sisters were provided with a copy of the First Amended and Restated State Street Bank and Trust Company Global managed Common Trust Funds Declaration of Trust (the "Declaration of Trust").

22.     The Declaration of Trust provides for the establishment of funds, including the Commodities Strategy, and it outlines State Street Bank's duties in connection with the offering of trustee, custodian, and record-keeping services for various trusts such as the trust established for the Sisters pursuant to the Agreement of Trust.

23.     Article VII, Section 1 of the Declaration of Trust states

7

unequivocally that "[State Street Bank] shall have the exclusive management and control of the [trust assets]." In this capacity, State Street was responsible for prudently and loyally managing the Sisters' assets.

The Declaration of Trust further details how State Street Bank would manage the investments, including that investments may be made to meet the liquidity needs of the Funds as "determined by the Trustee in its sole discretion." Article VII, Sec. 3

25.     Despite its prior representations to the contrary, beginning around late 2006, and in direct contravention of its fiduciary duties to the Sisters, SSgA's management deviated from its stated strategy for the LDB Strategy, and directed assets into leveraged positions of high-risk investments, including mortgage-backed securities, exposing the Strategy to enormous risk.

26.     SSgA placed LDB Strategy assets in non-investment grade instruments in direct violation of its prior representations that all investments would be investment grade. LDB Strategy assets were invested in ABX Indices which represent swaps whose returns are derived from underlying credit default swaps of the 20 representative subprime mortgage securitizations issued in the United States over a 6 month time frame.

27.     SSgA's altered investment strategy resulted in highly leveraged portfolios that exaggerated the Commodities Strategy and LDB Strategy's risks and exposure to losses. As of July 31, 2007, the market-adjusted notional value of the LDB Strategy's investment portfolio "exceeded invested capital by a factor of

8

approximately 6.10," indicating that the portfolio was leveraged 6 to 1 during this time period. This highly leveraged position, which one would expect to exist in hedge funds and not low risk investment plans, produced devastating results for assets invested in the LDB Strategy.

28.     Defendants, although purporting to actively manage enhanced index funds that would closely mirror the risks and track the performance of the conservative Lehman benchmark indices, instead violated their fiduciary duties by significantly deviating from prudent investment decisions. Defendants exposed the LDB Strategy to risks and market volatility far beyond those affecting the benchmark indices; created risks far out of line with the LDB Strategy's stated investment objectives; and misrepresented the true nature of the risks inherent in State Street's actual investment strategy of the LDB Strategy.

29.     Defendants' deviation from the represented investment strategy had a devastating effect on the value of the Sisters' invested assets.

30.     On August 2, 2007, State Street sent a letter to the Sisters detailing the substantial damage State Street inflicted on the Sisters' assets by investment in the LDB Strategy. In a section labeled: Impact on SSgA's Portfolios, State Street acknowledged that "the Limited Duration Bond Strategy has experienced significant negative performance in the first quarter of 2007 due to its exposure to the ABX Indices." The letter also stated:

> The Limited Duration Bond Strategy experienced negative performance in the first quarter of 2007 as a result of technical pressures (hedge fund selling) and spread widening in the BBB-rated

9

securities secured by subprime mortgages. The Limited Duration Bond Strategy experienced even more pronounced negative performance in the second quarter of 2007 which continued in July as spread widening moved up the capital structure to AAA and AA-rated securities secured by subprime mortgages. Other of SSgA's active fixed income and active derivative-based strategies have been affected to varying degrees by the problems in the subprime mortgage market as a result of having exposure to the Limited Duration Bond Strategy or due to other active positions affected by the aforementioned market events.

31.    The letter also noted that "the impact of the problems in the

subprime mortgage market has had the following impact on your investments with

SSgA":

> The Enhanced Dow Jones-AIG Commodities Future Strategy utilizes future and total return swaps to gain exposure to the 19 commodity futures contracts in the 5 major commodity groups that comprise the DJ-AIG Commodity Index. The collateral pool is invested in the Limited Duration Bond Strategy. The Enhanced Dow Jones-AIG Commodities Futures Strategy has experienced significant negative performance primarily due to the performance of the underlying collateral pool which is invested in the Limited Duration Bond Strategy.

> The Enhanced Dow Jones-AIG Commodities Strategy has returned -3.87 as of the end of July 2007 versus the Dow Jones-AIG Commodities Index which has returned 6.63 as of the end of July.

Later in the letter, State Street admitted that:

> We believe that what has occurred in the subprime mortgage market to date this year has been more driven by liquidity and leverage issues than long term fundamentals. Additionally, the downdraft in valuations has had a significant impact on the risk profile of our portfolios prompting us to take steps to seek to reduce risk across the affected portfolios. To date, in the Limited Duration Bond Strategy, we have reduced a significant portion of our BBB-rated securities and we have sold a significant amount of our AAA-rated cash positions. Additionally, AAA-rated exposure has been reduced as some total return swaps rolled off at month end. Throughout this period the Strategy has maintained and continues to be an AA in

10

average credit quality according to SSgA's internal portfolio analytics. The actions we have taken to date in the Limited Duration Bond Strategy simultaneously reduced risk in other SSgA active fixed income and active derivative-based strategies.

## CAUSES OF ACTION

### COUNT I

**Against All Defendants for Breach of Fiduciary Duty**

32.     Plaintiff incorporates all above allegations as if fully set forth herein.

33.     Defendants, by way of their role as trustee and investment manager, created a fiduciary relationship between themselves and the Sisters.

34.     By misrepresenting the quality and character of the Sisters' investment and haphazardly, recklessly, and knowingly mismanaging the Sisters' investment in the Commodities Strategy and the LDB Strategy, Defendants breached their fiduciary duty to the Sisters.

35.     The Sisters suffered damages by losing a significant portion of their investment, which was an investment fund to care for retired nuns.

36.     Defendants caused the damage to the Sisters by misrepresenting the quality and character of the Sisters' investment, inducing the Sisters to invest with Defendants, and then grossly mismanaging the investment by deviating from the investment's original intent.

37.     As alleged above, the scope of the fiduciary duties and responsibilities of State Street included managing the assets of the Commodity Strategy and the LBD Strategy.

38.   Moreover, Defendants failed to conduct an appropriate investigation of the merits of its highly risky and speculative investment management decisions even in light of the high risk of these inappropriate investments and the particular dangers that these holdings posed to the LBD Strategy.   Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of mismanaging the assets of the LDB Strategy in the manner alleged herein.   A reasonably prudent fiduciary would have managed the assets according to their stated objectives as opposed to gambling with participants' retirement savings as Defendants did in this case.

39.   As a consequence of Defendants' breaches of fiduciary duties alleged in this Count, the LDB Strategy and consequently the Sisters suffered massive losses.   Had Defendants discharged their fiduciary duties to prudently invest the LDB Strategy's assets, the losses suffered would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, Plaintiff has lost approximately one million dollars.

40.   Defendants are liable for these losses because the losses were caused by Defendants' breaches of fiduciary duty, including but not limited to, their imprudent decision to alter the investment strategy of the LBD Strategy and invest the LBD Strategy's assets in volatile mortgage backed instruments; engage in highly leveraged and risky transactions with LDB Strategy assets; and invest the LDB Strategy's assets in securities that are not included in the indices which State Street purportedly designed the LBD Strategy to track, all of which was imprudent

12

under the circumstances presented here.

41.     Had the Defendants properly discharged their fiduciary duties in their fiduciary or trustee roles that the Defendants sold and managed, the Sisters would have avoided some or all of the losses caused by Defendants.

## COUNT II

### Violation of Massachusetts Prudent Investor Act, M.G.L.A. 203

42.     Plaintiff incorporates all above allegations as if fully set forth herein.

43.     The Agreement of Trust between SSgA and the Sisters as well as SSgA is governed by Massachusetts law.

44.     Defendants violated the Massachusetts Prudent Investor Act by failing to prudently invest the Sisters' assets in light of:

(a)     general economic conditions, including but not limited to the eventual collapse of the housing market;

(b)     the role that the Sisters' investment or course of action plays within the overall trust portfolio;

(c)     the expected total return from income and the appreciation of capital; and

(d)     other resources of the beneficiaries.

45.     Furthermore, Defendants did not make reasonable efforts to verify facts relevant to the investment and management of trust assets.

13

## COUNT III

### Violation of Iowa Code, I.C.A. § 502.502

46.    Plaintiff incorporates all above allegations as if fully set forth herein.

47.    State Street represented to the Sisters that their investment would be safe and would track the Dow Jones-AIG Commodities Index but instead invested in high-risk securities and diverted from the represented investment strategy. State Street's representations and investment materials characterizing the quality and nature of the Sisters' investments operated as a fraud in violation of Iowa Code §502.502.

## COUNT IV

### Breach of Trust

48.    Plaintiff incorporates all above allegations as if fully set forth herein.

49.    State Street acted as a Trustee and fiduciary to the Sisters.

50.    State Street breached the Trust agreement by acting as manager of the Sisters' investment and failing to prudently manage the trust.

51.    State Street misrepresented the quality and character of the Sisters' investment and utterly failed to prudently manage the trust. Defendants' actions breached the trust agreement and caused damages to the Sisters.

52.    Defendants breached their fiduciary duties in that they knew, or should have known, the facts as alleged above, and therefore knew, or should have known, that the LDB Strategy's assets should not have been invested in mortgage-backed instruments or otherwise invested improperly as described herein.

14

53.     With respect to calculation of the losses to the Commodities and LDB Strategy, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Sisters would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plan's assets prudently and appropriately, and in this instance, according to the stated objective of the LDB Strategy. The remedy restores the Sisters lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

## COUNT V

### Unjust Enrichment

54.     Plaintiff incorporates all above allegations as if fully set forth herein.

55.     State Street unjustly received investment fees from the Sisters.

56.     The fees State Street received from the Sisters were a direct benefit to State Street.

57.     Because State Street defrauded the Sisters; it would be unjust for State Street to retain the benefit.

### JURY DEMAND

Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring that the Defendants, and each of them, have breached their fiduciary duties to Plaintiff;

15

B.  Declaring that the Defendants violated the Massachusetts Prudent Investor Act;

C.  Declaring that the Defendants breached the trust agreement between themselves and the Sisters;

D.  Ordering Defendants to pay damages to the Sisters as a result of Defendants' wrongdoing, including, but not limited to losses resulting from imprudent investment of each trust's assets, and to restore profits the Defendants made through use of the Sisters' assets, and to restore to the plans all profits which the participants would have made if the Defendants had fulfilled its fiduciary obligations;

E.  Imposing a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the plans as the result of Defendants' wrongdoing;

F.  Awarding attorneys' fees and expenses to the Sisters; and

G.  Granting such other and further relief as the Court may deem just and proper.

Dated: April 6, 2009

FARUQI & FARUQI, LLP

David H. Leventhal (DL-7673)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Local Counsel for Plaintiff*

16

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

*Lead Counsel for Plaintiff*